DIETZ, Judge.
 

 *711
 
 Defendant Shelley Anne Osborne appeals her conviction for possession of heroin. Law enforcement found Osborne unconscious in a hotel room and, after emergency responders revived her, she admitted she used heroin. Officers searched the hotel room and found syringes, spoons with burn marks and residue, and a rock-like substance.
 

 The State did not have the substance tested using a scientifically valid chemical analysis. Instead, at trial the State relied on Osborne's statement to officers that she used heroin, as well as officers' descriptions of the rock-like substance and the results of field tests on the substance, including one performed in open court.
 

 As explained below, the State's evidence was insufficient to survive a motion to dismiss. The State relies on a series of Supreme Court cases,
 
 *712
 
 later synthesized in this Court's decision in
 
 State v. Bridges
 
 , --- N.C. App. ----,
 
 810 S.E.2d 365
 
 (2018), concerning the defendant's own identification of the seized substance. Here, by contrast, Osborne never identified the seized substance as heroin-she told officers only that she had used heroin before losing consciousness. Although the State's evidence strongly suggests the seized substance was heroin, that evidence was not enough "to establish the identity of the controlled substance beyond a reasonable doubt" and thus the State was required to present
 
 *270
 
 "some form of scientifically valid chemical analysis" to survive a motion to dismiss.
 
 State v. Ward
 
 ,
 
 364 N.C. 133
 
 , 147,
 
 694 S.E.2d 738
 
 , 747 (2010). Because the State acknowledges that it did not present any scientifically valid chemical analysis at trial, we vacate the trial court's judgment on this count.
 

 Facts and Procedural History
 

 On 17 November 2014, police responded to a call about a possible overdose in a hotel room. After arriving at the hotel room, officers found Defendant Shelley Anne Osborne in the bathroom. She was unconscious, unresponsive, and turning blue. Osborne regained consciousness after emergency responders arrived and administered an anti-overdose drug. When Osborne regained consciousness, she told an officer that she "had ingested heroin."
 

 The responding officers searched the hotel room and found Osborne's two children, who were around four or five years old. The officers also found multiple syringes, spoons with burn marks and residue on them, and a rock-like substance that appeared to be heroin. An officer conducted a field test on the rock-like substance, which yielded a "bluish color," indicating a "positive reading for heroin."
 

 On 14 September 2015, the State indicted Osborne for possession of heroin and two counts of misdemeanor child abuse. At trial, one of the responding officers testified about discovering Osborne unconscious in the hotel room and her admission that she had used heroin. The officer also described the rock-like substance, including how it resembled heroin; explained the results of the field test indicating the substance was heroin; and discussed how other objects found in the hotel room, including the syringes and spoons, were common paraphernalia used to inject heroin. The officer also performed a field test on the substance seized from the hotel room in open court and displayed the results, which indicated the substance was heroin, to the jury. Osborne did not object to the in-court field test. Osborne also did not present any evidence in her defense. She moved to dismiss the charges at the close of the evidence. The trial court denied the motion.
 

 *713
 
 The jury convicted Osborne on all charges, and the trial court sentenced her to 6 to 17 months in prison for possession of heroin and a consecutive sentence of 60 days for the two counts of misdemeanor child abuse. The trial court suspended both sentences. Osborne appealed.
 

 Analysis
 

 Osborne argues that the trial court erred in denying her motion to dismiss the possession of heroin charge because the State failed to present sufficient evidence that the seized substance was heroin. As explained below, we agree that the evidence presented was insufficient but recognize that this issue is unsettled and may merit further review in our Supreme Court.
 

 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C. App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980).
 

 In a drug possession case, "the burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution."
 
 State v. Ward
 
 ,
 
 364 N.C. 133
 
 , 147,
 
 694 S.E.2d 738
 
 , 747 (2010). "Unless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required."
 

 Id.
 

 The State concedes that, other than the field tests conducted by the arresting officers, the State did not conduct any forensic analysis that identified the rock-like substance seized from Osborne's hotel room as heroin. The State also concedes-or, at least,
 
 *271
 
 does not dispute-that the field tests officers conducted at the scene and later at trial are not scientifically valid chemical analyses sufficient to support a conviction.
 

 Instead, the State argues that this case is controlled by a line of decisions from our Supreme Court involving the defendant's identification of the controlled substance. First, in
 
 State v. Nabors
 
 ,
 
 365 N.C. 306
 
 ,
 
 718 S.E.2d 623
 
 (2011), and
 
 State v. Williams
 
 ,
 
 367 N.C. 64
 
 ,
 
 744 S.E.2d 125
 
 (2013), the Supreme Court held that a defense witness's in-court
 
 *714
 
 testimony identifying a substance as cocaine was sufficient to overcome a motion to dismiss even in the absence of forensic analysis. Then, in
 
 State v. Ortiz-Zape
 
 ,
 
 367 N.C. 1
 
 ,
 
 743 S.E.2d 156
 
 (2013), the Supreme Court held that an officer's testimony concerning the defendant's out-of-court identification of the substance as cocaine, combined with the officer's own testimony that the substance appeared to be cocaine, was sufficient to survive a motion to dismiss.
 

 Recently, this Court attempted to synthesize this line of cases into a coherent rule of law.
 
 State v. Bridges
 
 , --- N.C. App. ----,
 
 810 S.E.2d 365
 
 (2018). In
 
 Bridges
 
 , the defendant told a law enforcement officer that she had "a bagg[ie] of meth hidden in her bra," and the officer then found a "meth-like" substance in a baggie in the defendant's bra.
 

 Id.
 

 at ----,
 
 810 S.E.2d at 366
 
 . At trial, the officer described the defendant's statements and the discovery of the baggie.
 

 Id.
 

 We held that "the arresting officer's testimony offered without objection during the State's evidence" was sufficient to meet the State's burden of proof and send the issue to the jury.
 

 Id.
 

 at ----,
 
 810 S.E.2d at 367-68
 
 .
 

 The State argues that this case is controlled by
 
 Bridges
 
 but there is a key factual distinction between this case and the
 
 Bridges
 
 line of cases. In all of the earlier cases-
 
 Nabors
 
 ,
 
 Williams
 
 ,
 
 Ortiz-Zape
 
 , and
 
 Bridges
 
 -the defendants' statements (or those of another defense witness) identified the substance seized by law enforcement as a controlled substance. Here, by contrast, Osborne did not identify the seized substance as heroin. Instead, after officers discovered her unconscious in a hotel room and emergency responders administered an anti-overdose medication to revive her, Osborne told the officers that she had ingested heroin. The officers independently searched the hotel room and recovered drug paraphernalia and a rock-like substance believed to be heroin.
 

 We are reluctant to further expand the
 
 Bridges
 
 holding to apply in cases where the defendant did not actually identify the seized substance. To be sure, the State's evidence strongly suggests the seized substance was heroin-Osborne admitted she used heroin, there was drug paraphernalia in the hotel room consistent with heroin use, the rock-like substance found in the hotel room matched the general description of heroin, and a field test indicated the substance was heroin.
 

 But the question is not whether the State's evidence was strong, but whether that evidence "establish[ed] the identity of the controlled substance beyond a reasonable doubt," thus eliminating the need for a scientifically valid chemical analysis.
 
 Ward
 
 ,
 
 364 N.C. at 147
 
 ,
 
 694 S.E.2d at 747
 
 . We are unwilling to hold that it does. After all, there are other controlled
 
 *715
 
 substances that appear as a white or gray rock-like substance.
 
 See, e.g.,
 

 Nabors
 
 ,
 
 365 N.C. at 308
 
 ,
 
 718 S.E.2d at
 
 624 ;
 
 State v. Hicks
 
 ,
 
 243 N.C. App. 628
 
 , 630,
 
 777 S.E.2d 341
 
 , 343 (2015) ;
 
 State v. Mobley
 
 ,
 
 206 N.C. App. 285
 
 , 292,
 
 696 S.E.2d 862
 
 , 867 (2010) ;
 
 State v. McNeil
 
 ,
 
 165 N.C. App. 777
 
 , 779,
 
 600 S.E.2d 31
 
 , 33 (2004),
 
 aff'd
 
 ,
 
 359 N.C. 800
 
 ,
 
 617 S.E.2d 271
 
 (2005). And the drug paraphernalia seized from the hotel room can be used in connection with other controlled substances.
 
 See, e.g.,
 

 State v. Wiggins
 
 ,
 
 185 N.C. App. 376
 
 , 380,
 
 648 S.E.2d 865
 
 , 869 (2007) ;
 
 State v. Muncy
 
 ,
 
 79 N.C. App. 356
 
 , 358,
 
 339 S.E.2d 466
 
 , 468 (1986).
 

 Simply put, if we held that the State's evidence in this case was sufficient to show the seized substance was heroin "beyond a reasonable doubt," it likely would eliminate the need for scientifically valid chemical analysis in many-perhaps most-drug cases. This, in turn, would render our Supreme Court's holding in
 
 Ward
 
 largely irrelevant. This Court has no authority to undermine a Supreme Court holding in that way.
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989). If the
 
 Bridges
 
 line of cases
 
 *272
 
 warrants further expansion-and further eroding of
 
 Ward
 
 -that change in the law must come from the Supreme Court.
 

 Applying
 
 Ward
 
 here, the State's evidence did not establish beyond a reasonable doubt that the seized substance was heroin.
 
 364 N.C. at 147
 
 ,
 
 694 S.E.2d at 747
 
 . Thus, the State was required to present scientifically valid chemical analysis identifying the seized substance as heroin.
 

 Id.
 

 The State concedes it did not do so. Accordingly, the trial court should have granted Osborne's motion to dismiss for insufficient evidence.
 

 Because we rule in Osborne's favor on this issue, we need not address her remaining arguments concerning her conviction on the drug possession charge. Osborne also challenges her convictions for misdemeanor child abuse on the ground that "the indictments for misdemeanor child abuse allege that Ms. Osborne used 'heroin in the presence of the child.' " Osborne argues that the State was required to prove the seized substance was heroin to support these charges as well. We disagree. Unlike the drug possession charge, the misdemeanor child abuse charges did not require the State to present a chemical analysis proving the seized substance was heroin. The State's evidence, including the officers' discovery of Osborne unconscious from an apparent drug overdose; Osborne's admission that she used heroin; and the presence of drug paraphernalia consistent with heroin use in the hotel room occupied by Osborne and her children was sufficient to send these charges to the jury. Likewise, in light of the State's other evidence, the admission of the in-court field test of the seized substance-even if erroneous-was harmless and certainly did not rise to the level of plain error.
 

 *716
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012). We therefore find no error in the trial court's judgment on the misdemeanor child abuse charges.
 

 Conclusion
 

 For the reasons discussed above, we vacate the trial court's judgment on the possession of heroin charge and find no error in the trial court's judgment on the misdemeanor child abuse charges.
 

 VACATED IN PART; NO ERROR IN PART.
 

 Chief Judge McGEE and Judge CALABRIA concur.